UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICARDO LOPEZ REYES,<br><br>                Petitioner,<br><br>    v.<br><br>LAURA HERMOSILLA, *et al.*,<br><br>                Respondents. | Case No. C25-2525-JNW-MLP<br><br>REPORT AND RECOMMENDATION |

## I.    INTRODUCTION

Petitioner Ricardo Lopez Reyes is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody. (Dkt. # 1.) Petitioner, who is proceeding through counsel, asserts that his stop, arrest, and detention by ICE officers without reasonable suspicion, as well as his ongoing detention, violate his rights under the Fourth and Fifth Amendments. (*See id.*) Respondents have filed a return (dkt. # 6), and Petitioner has filed a traverse to the return (dkt. # 8).

The Court, having considered the parties' submissions and the governing law, concludes that Petitioner's federal habeas petition should be denied to the extent Petitioner seeks immediate

release from custody based on the alleged violation of his rights pertaining to his stop, arrest, and initial detention by ICE officers. The Court further concludes that Petitioner is entitled to a bond hearing as a member of the bond denial class in *Rodriguez Vazquez v. Bostock*, No. C25-5240-TMC (W.D. Wash.), and he should be granted such a hearing should he request one.

## II. BACKGROUND

Petitioner is a native and citizen of Mexico, who entered the United States at an unknown time and location. (*See* Lambert Decl. (dkt. # 7), Ex. A.) On the morning of November 8, 2025, Petitioner was pulled over by ICE officers in Seaside, Oregon, as he was on his way to work, and he was thereafter arrested. (*See id.*, Exs. A-B.) According to Petitioner, he was alone in the car when two unmarked cars pulled in closely behind him and he saw flashing lights on one of the cars. (Dkt. # 1 at 9.) Petitioner pulled over and rolled down his window as several men dressed in camouflage with cloth masks covering their faces approached the car. (*Id.* at 9-10.) The men did not have uniforms identifying them as ICE officers or law enforcement officers affiliated with some other agency. (*Id.* at 10.)

Petitioner was asked who the car belonged to, and Petitioner responded that it was his. (Dkt. # 1 at 10.) Petitioner asked why he had been pulled over but was not provided a reason. (*Id.*) Petitioner was then asked for his driver's license, which he provided, and he was directed to step outside the car. (*Id.*) Petitioner complied, and he was immediately handcuffed and driven in one of the unmarked cars to Seaside Elementary School where he was instructed to wait in an unmarked van with other detained men. (*See id.*) After a lengthy wait, the eight individuals in the van were taken to the ICE facility in Portland, Oregon. (*Id.*)

Petitioner maintains that he was not provided any information as to why he had been stopped, he was not advised that the officers were immigration officials authorized to make

REPORT AND RECOMMENDATION
PAGE - 2

arrests, he was not shown a warrant for his arrest, and he was not allowed to call a family member or an attorney for several hours. (Dkt. # 1 at 10-11.) After being processed at the Portland ICE facility, he was transported to NWIPC in Tacoma. (*See id.*) Petitioner claims he has no criminal history, he had never encountered ICE officers at the border or anywhere else in the United States prior to his arrest, and he had no removal order nor any applications for immigration benefits pending at the time of his arrest. (*Id.* at 10.)

On the day of his arrest, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") charging him as removable pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled. (Lambert Decl., Ex. C.) Petitioner was scheduled to appear before the Tacoma Immigration Court for a master calendar hearing on December 18, 2025, and he apparently filed an application for asylum at that time. (*Id.*, Ex. D; dkt. # 8 at 5.)

Petitioner filed this habeas petition on December 10, 2025, arguing that his stop, arrest, and detention by Respondents violates his rights under the Fourth and Fifth Amendments. (*See* dkt. # 1 at 11-14.) Petitioner asks that he be released from custody without being required to pay a bond or wear an ankle monitor. (*Id.* at 15.) Respondents argue in response that Petitioner's claims concerning alleged constitutional violations during his arrest by ICE officers are not cognizable in this habeas action and that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b). (Dkt. # 6.)

//

//

//

REPORT AND RECOMMENDATION
PAGE - 3

### III. DISCUSSION

####  A. Stop, Arrest, and Detention

Petitioner's central claim in this federal habeas action is that his stop, arrest, and detention by ICE officers on November 8, 2025, violated his constitutional rights under the Fourth and Fifth Amendments. (Dkt. # 1 at ¶¶ 35-47.) Respondents argue, *inter alia*, that Petitioner's claims concerning alleged constitutional violations during his arrest do not provide a basis for the relief he seeks herein, *i.e.,* release from custody. (Dkt. # 6 at 4-5.) The Court concurs.[1]

The remedy for an unlawful arrest in violation of the Fourth Amendment is suppression of evidence, not release from custody. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040-41 (1984); *United States v. Garcia-Beltran*, 443 F.3d 1126, 1131-32 (9th Cir. 2006); *see also Martinez-Medina v. Holder*, 673 F.3d 1029, 1033-34 (9th Cir. 2010) (exclusionary rule applies in civil removal proceedings only when the Fourth Amendment violation is egregious). The United States Supreme Court has explained that:

> Irregularities on the part of the Government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law. "A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment."

*United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (citations omitted).

The Supreme Court has also explained that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful

---

[1] Because the Court concurs that Petitioner's arrest-related claims warrant dismissal on the grounds that the requested relief is unavailable in this federal habeas action, the Court need not address Respondents' other contentions regarding these claims.

arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Lopez-Mendoza*, 468 U.S. at 1039; *see also Stone v. Powell*, 428 U.S. 465, 485 (1976) (noting that "judicial proceedings need not abate when the defendant's person is unconstitutionally seized" (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *Frisbie v. Collins*, 342 U.S. 519 (1952))); *Garcia-Beltran*, 443 F.3d at 1132 ("[T]here is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity." (quotation omitted)).

The record makes clear that Petitioner is currently in removal proceedings and is detained pursuant to those ongoing proceedings. Petitioner is not entitled to release based on his allegedly unlawful arrest. *See, e.g., Marroquin Salazar v. Noem*, 2025 WL 2525050, at *1 (C.D. Cal. Dec. 8, 2025) (concluding that challenges to alleged unlawful arrest by immigration officers were not cognizable in federal habeas action as even if arrest was unlawful, petitioner would not be entitled to release from custody); *Rodrigues De Oliveira v. Joyce*, 2025 WL 1826118, at *5 (D. Me. July 2, 2025) ("Petitioner's argument that an illegal arrest automatically results in an illegal detention is misguided. . . . [E]ven if Petitioner's initial arrest was unlawful, her detention pending removal may stand."); *Alonso-Portillo v. Bondi*, 2025 WL 2483393, at *11 (S.D. Ohio Aug. 28, 2025) ("Traditional application of the exclusionary rule results in the suppression of evidence, as 'fruits of the poisonous tree,' obtained in violation of the Fourth Amendment. But the rule does not, as Alonso-Portillo asserts here, dictate his immediate release from detention."); *Marvan v. Slaughter*, 2025 WL 1940043, at *3-4 (D. Mont. July 15, 2025) (petitioner could not obtain habeas relief on Fourth Amendment violation where administrative removal proceedings had commenced).

Accordingly, Petitioner's claims alleging constitutional violations arising out of his stop, arrest, and detention by ICE officers on November 8, 2025, should be dismissed as the claims are not cognizable in this federal habeas action.

### B.     Ongoing Detention

Petitioner alleges a due process violation in his third ground for relief, though the claim lacks clarity. The claim appears to challenge, at least in part, Petitioner's detention at the time of his allegedly unlawful stop and arrest. (*See* dkt. # 1 at 13, ¶ 45.) As explained above, any due process challenge to Petitioner's initial arrest and detention are not cognizable here. Petitioner also appears to challenge his ongoing detention, claiming that he was entitled to an individualized determination of whether he should be detained following his arrest and a meaningful opportunity to be heard prior to detention. (*See id.*)

As noted above, DHS initiated removal proceedings against Petitioner on the day he was stopped by ICE officers in Oregon and taken into custody. (*See* Lambert Decl., Exs. B, C.) "Detention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). Two statutory provisions govern the detention of noncitizens prior to a final order of removal, 8 U.S.C. §§ 1225 and 1226.

Section 1225 authorizes the Government to detain certain noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). As relevant here, § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). In other words, detention under this statutory provision is mandatory.

REPORT AND RECOMMENDATION
PAGE - 6

      Section 1226, in contrast, authorizes the Government to detain certain noncitizens who are already in the country pending the outcome of removal proceedings, and § 1226(a) sets out the "default rule" applicable in such cases. *Jennings*, 583 U.S. at 289. The default rule provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. . . . [T]he Attorney General—
>
>     (1) may continue to detain the arrested alien; and
>
>     (2) may release the alien on—
>
>         (A) bond . . . ; or
>
>         (B) conditional parole. . . .

8 U.S.C. § 1226(a). Thus, detention under this statutory provision is discretionary and not mandatory as is the case under § 1225(b).

      Petitioner appears to claim in his petition that he was entitled to a detention hearing under 8 U.S.C. § 1226(a). (*See* dkt. # 1 at 14.) Respondents argue in their return that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b) and is therefore subject to mandatory detention. (Dkt. # 6 at 2-4.) Respondents, however, acknowledge that though their position remains that noncitizens similar to Petitioner are detained pursuant to § 1225(b), courts in this district have rejected that argument and concluded that § 1226(a) applies to such individuals. (*Id.* at 3-4 (citing *Rodriguez Vazquez*, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025)).

      In *Rodriguez Vazquez*, the Court certified a bond denial class that was defined as follows:

> All noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

REPORT AND RECOMMENDATION
PAGE - 7

*Rodriguez Vazquez*, 2025 WL 2782499, at *6. The court issued therein the following declaratory relief:

> The Court declares that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

*Id.* at *27.

Respondents concede that Petitioner would be a member of the Bond Denial Class were he to request a bond hearing. (Dkt. # 6 at 4.) Petitioner, however, has requested no such relief. While Petitioner argues in his traverse that he may not be detained pursuant to § 1225(b), and appears to reference in his argument the district court's decision in *Rodriguez Vazquez*, he at no point cites to that case nor does he make any argument that he is entitled to relief in accordance with that decision. (*See* dkt. # 8.) In fact, Petitioner has made no request at all for a bond hearing, he seeks only release from custody. (*See* dkt. # 1 at 15.)

Petitioner, at most, asserts a due process violation arising out of his ongoing detention, but he offers no evidence or argument demonstrating that he has suffered such a violation. While it appears Petitioner likely has a viable claim that his continued detention under § 1225(b) violates the INA, *see Rodriguez Vazquez*, 2025 WL 2782499, at *27, he does not specifically assert any such claim in his petition, nor does he request any form of relief appropriate to such a claim.

Accordingly, any intended due process claim relating to Petitioner's ongoing detention should be denied. The Court should refrain from granting Petitioner any relief under *Rodriguez Vazquez* absent a specific request from Petitioner that the Court consider doing so.

## IV.   CONCLUSION

For the foregoing reasons, this Court recommends Petitioner's federal habeas petition (dkt. # 1) be denied. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 29, 2026**.

DATED this 15th day of January, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge